Somerville v. Gullett Gin Co.

SOMERVILLE *et al. v.* GULLETT GIN Co.

(*Jackson.*   April Term, 1917.)

1. **PRINCIPAL AND AGENT.** Powers of agent. Apparent scope of authority. Warranty.

The purchaser of a gin under a contract warranting it to be as represented, but providing that no other warranty should bind the seller, could not recover on alleged verbal warranty of the agent who sold the machine, since such verbal warranty was beyond the apparent scope of the agent's authority. (*Post, pp.* 513-517.)

Cases cited and approved: Nixon Mining Drill Co. v. Burk, 132 Tenn., 481; Hines v. Wilcox, 96 Tenn., 148.

Cases cited and distinguished: Johns v. Jaycox, 67 Wash., 403; Wood Mowing & Reaping Co. v. Crow, 70 Iowa, 340; Furneaux v. Esterly, 36 Kan., 539.

2. **EVIDENCE.** Admissibility. Parol evidence varying writing.

Parol evidence of verbal warranty is inadmissible to vary the written warranty. (*Post, pp.* 513-517.)

3. **PRINCIPAL AND AGENT.** Powers of agent. Ratification by principal.

The principal cannot be held to have ratified the acts of the agent which were beyond the apparent scope of his authority without full knowledge by the principal, so that the seller of the gin who merely tried to make the machine do the work required of him did not ratify his agent's unauthorized verbal warranty of which the buyer had given him no notice. (*Post, p.* 518.)

4. **SALES.** Warranty. Implied warranty.

Where the contract of sale of a machine provided that no other warranty than that in the written contract should be binding, no implied warranty could be found. (*Post, pp.* 518, 519.)

Somerville v. Gullett Gin Co.

Cases cited and approved: Bagley v. General Fire Extinguisher Co., 150 Fed., 284; Boyer v. Neel, 50 Mo. App. 26; McCormick Harvesting Machine Co. v. Allison, 116 Ga., 445.

5. **SALES.    Warranties.    What constitutes.**

Where the contract of sale of a gin warranted the machine to perform what was claimed for it in the printed circulars, the language of the circulars was adopted and became the warranty of capacity. (*Post, p.* 519.)

6. **SALES.    Breach of warranty.    Damages.    When recoverable.**

Where the buyer of a gin claimed that it was not satisfactory, the seller was not, solely on account of his attempt during two months to make the machine do the necessary work, liable for the damages due to the delay, when the machine was not shown to have been defective under the warranty given. (*Post, pp.* 519, 520.)

---

FROM SHELBY

---

Appeal from the Circuit Court of Shelby County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—A. B. PITTMAN, Judge.

WILSON & ARMSTRONG, for appellant.

CARUTHERS EWING, for appellee.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by Somerville & Somerville, a firm of cotton planters, to recover damages from the Gullett Gin Company on account of the failure of certain cotton gins to work and gin plaintiffs' crop, and plain-

tiffs sued for the amount alleged to have been lost by reason of delay and missing a favorable market. The trial judge, after excluding most of plaintiffs' proof directed a verdict in favor of the defendants, and plaintiffs took the case to the Court of Civil Appeals. That court reversed the action of the trial judge and remanded the case for trial. Both parties filed petitions for *certiorari,* and both petitions have been granted and the case argued here.

It appears that the plaintiffs were Mississippi planters and grew on their place a peculiar variety of long staple cotton. In the spring of 1913 they purchased from the defendants certain cotton gins to be installed on plaintiffs' plantation. The gins were set up before the cotton was picked. The negotiations prior to the contract were had between the plaintiffs and an agent of defendants, one Barrett, and a written contract was entered into as follows:

"Gullett Gin Co., Amite, La.:

"You will please send to point named below on or about—as soon as possible—1913, or as soon thereafter as possible the machinery herein described, upon the terms and conditions expressed. [Shipping directions then follow with the terms of purchase.]

"3-70 saw R. H. MB Huller, Double Ribb gin.

1-11" Overflow Telescope Pipe & Leather Joint

30½' 8" Leather Belt.

One Idler for Main Drive Belt.

4' of Distributer Box with Belt.

"Extra Huller Rollers for Gins.

"Machinery is sold subject to warranty expressed on back hereof, and no other.

"This order is subject to the approval of the Gullett Gin Company at its principal office in Amite, La., and when accepted it will not be subject to countermand without their written consent; and in event of such consent the purchaser agrees to pay in consideration thereof an amount equal to one-fifth of the purchase price herein stipulated, which sum shall at once be due and payable.

"No agreement, verbal or otherwise, other than set forth herein, forms any part of this contract.

"Witness my (or our) signature this 23d day of May, 1913.                SOMERVILLE & SOMERVILLE.

"By WM. G. SOMERVILLE.

"Accepted at Amite, La., May 24, 1913.

"GULLETT GIN COMPANY,

"By E. H. BOSTICK, Sect."

The warranty expressed on the back of this contract was in these words:

"This machinery is fully warranted to be of good material and well made, and with proper management to perform what is claimed for it in printed circulars.

"But, if, upon a full and fair trial, it should not satisfactorily do its work, then immediate notice must be given in writing to Gullett Gin Company, at Amite, La., and to the agent from whom it was purchased, and reasonable time and friendly assistance given to remedy the defect; and in case the trouble be caused from a clearly defined original defect in the machine itself,

then the Gullett Gin Company will furnish the defective part without charge; defect in any part not to condemn other parts.

"And if, on trial the machine cannot be made to perform the work of a capacity for which it was sold, as per this order, then the Gullett Gin Company agrees to take said defective machinery back and refund so much of cash payment and notes as applies to the defective machinery.

"The purchaser agrees to properly put up and operate machinery according to the plans furnished by the Gullett Gin Company, and that, if the fault be traceable to not putting up by these plans or operating according to directions, purchaser agrees to pay all expenses incurred in rectifying it.

"Ten days' use of same will be conclusive evidence of fulfillment of warranty and acceptance.

"Any failure on the part of purchaser to comply with his contract releases this warranty entirely."

The plaintiffs insist that Mr. Barrett, defendants' agent, gave them a parol warranty in respect to the gins at the time they were ordered, that he represented them as being peculiarly adapted to the long staple cotton which plaintiffs grew, and they base their suit partially on a breach of the said warranty, which is not a part of the written contract.

We are of opinion that the plaintiffs cannot recover on this alleged verbal warranty, for two reasons: First, because it was beyond the apparent scope of the agent's authority to have made such a warranty; and, second,

137 Tenn.—33

because the evidence tending to show that such a warranty was made must be held inadmissible in view of the written contract.

Referring recently to the power of a selling agent to make warranties, this court said that an agent might make such warranties as the law would imply had the sale been made by the principal direct, and also that an agent had "implied authority to make in the name of the principal such warranty of the quality and condition of the property sold as is usually and customarily made in like sales of a similar property at that time and place." *Nixon Mining Drill Co.* v. *Burk,* 132 Tenn., 481, 178 S. W., 1116, L. R. A., 1916C, 411.

There is no proof in this record as to what is usual and customary in the sale of cotton gins, but we pass this.

The agent of the defendants in the case before us was supplied with blank order forms, one of which, heretofore set out, the plaintiffs signed and forwarded to the defendants. As appears above, it was stipulated in this order that "no agreement verbal or otherwise, other than set forth herein, forms any part of this contract." It was further stipulated that the machinery was sold "subject to the warranty expressed on the back hereof and no other."

This order, containing these representations, signed by the purchasers, went on to the sellers for acceptance, before the contract was consummated.

The supreme court of Washington has said;

''While an agent's authority can hardly be limited by the form of blanks he carries, that circumstance and the nature of the business should put a purchaser on inquiry.'' *Johns* v. *Jaycox,* 67 Wash., 403, 121 Pac. 854, 39 L. R. A. (N. S.) 1151, Anno. Cas. 1913D, 471.

''Evidence that the authority of the agent to warrant was limited to the giving of a printed warranty only furnished him by his principal is not admissible unless it be also shown that the purchaser had knowledge of the limitation; but where the purchaser has knowledge that such a warranty was furnished, he cannot accept an oral warranty from the agent different in its terms and require the principal to comply with such oral warranty.'' Mechem on Sales, section 1288, citing *Wood Mowing & Reaping Co.* v. *Crow,* 70 Iowa, 340, 30 N. W., 609; *Furneaux* v. *Esterly,* 36 Kan., 539, 13 Pac., 824.

If the agent undertook to make a verbal warranty as to these machines, in spite of the limitation on his authority indicated by this order form, such an agreement on his part would have been an unusual thing and without the apparent scope of his authority.

The plaintiffs, having in effect made to defendants a written statement that there was no such warranty, that there was no agreement save as set forth in the written contract, prior to the acceptance of the order, should not now be permitted to assert the contrary.

We do not see furthermore upon what principle parol evidence could be admitted to vary the terms of this written contract and to establish an independent verbal warranty.

In *Hines* v. *Willcox,* 96 Tenn., 148, 33 S. W., 914, 34 L. R. A., 824, 832, 54 Am. St. Rep., 823, the court reviewed the cases upon the parol evidence rule and undertook to state and classify the usual exceptions.

It was said that the rule did not apply where parol evidence in no way varied or altered the terms of the written contract, but tended to establish an independent or collateral agreement not in conflict therewith. Certainly the evidence excluded by the trial judge in this case does not fall within this exception to the rule. The contract provided that the machinery was sold subject to the warranty expressed on the back and no other.

The next exception noted in *Hines* v. *Willcox* was that in cases where the alleged contract was verbal and entire, and a part only was reduced to writing, parol evidence might be admitted. The contract here under consideration provides on its face that no agreement, verbal or otherwise, other than set forth, forms any part thereof.

A further exception was the admission of parol evidence of collateral matters such as fraud in the soundness of an article when the written warranty extends only to title. The written warranty in this case does not stop at title, but is that the machine is fully warranted to be of good material and well made and with proper management to perform what is claimed for it in printed circulars.

It was also said in *Hines* v. *Willcox* that parol evidence of fraudulent representations made in negotiating the contract or as an inducement to the contract was

admissible.    We discover no suggestion of fraud in this record.    The selling agent thought that the gin sold plaintiffs would answer their purposes, and the Memphis manager entertained the same opinion, and the defendants' home office also believed such to be the case. They all made diligent efforts after the trouble was reported to make the gins handle plaintiffs' cotton and spent much time and money endeavoring to accomplish this end, and the defendants and their agents were evidently as much surprised as were plaintiffs at the failure of the gins.

We do not mean to say that the foregoing are the only exceptions to the parol evidence rule.    Others may arise, but our attention is not called to any good reason for relaxing the rule in the case here presented.    Plaintiffs are seeking to justify the admission of the evidence excluded by an effort to bring it under one or more of the exceptions noted.    In our opinion, they have failed to do so.

It is insisted, however, that the alleged verbal warranty made by the selling agent was ratified by the general agent of defendants at Memphis, and also later by defendants themselves.    The proof indicates that, when the failure of the gins to work was communicated to the general agent at Memphis, he expressed surprise, and insisted that the machines would gin plaintiff's cotton.    Likewise the home office was incredulous as to the reported failure.    The defendants at once began efforts to make the gins handle plaintiffs' cotton, but were unsuccessful.

It does not appear that plaintiffs or the manager of their plantation ever told defendants of this independent parol warranty that they claim was made by the selling agent. They merely informed defendants that the machines would not work. They did not notify defendants of the warranty now set up. It is elementary, of course, that there can be no ratification without full knowledge. The acts of the defendants in undertaking to adjust the machines and to adapt them to the plaintiff's cotton were merely such acts as they were required to perform under their written contract, and and cannot be construed as a ratification of a warranty of which they knew nothing.

We think no implied warranty can exist in this case. It is competent for parties to put their entire agreement in writing and to stipulate that no obligation shall rest upon either save as defined by their written contract. This was done here. It was recited that the machinery was sold subject to the warranty expressed on the back of the contract and no other, and that no agreement, verbal or otherwise, other than set forth therein, formed any part of the contract.

By such provisions as the foregoing we think there is no doubt the seller of an article may exclude any implied warranty that it is fit for the purpose for which it was manufactured. *Bagley* v. *General Fire Extinguisher Co.*, 150 Fed., 284, 80 C. C. A., 172; *Boyer* v. *Neel*, 50 Mo. App., 26; *McCormick Harvesting Machine Co.* v. *Allison*, 116 Ga. 445, 42 S. E., 778.

The parties to this contract in writing agreed that no other warranties existed with respect to these gins, save those set out in the instrument. Why should the court disregard this stipulation?

.The whole trouble arises apparently from the fact that these double-ribbed gins were not suited to plaintiffs' long staple cotton. No difficulty was experienced with the single-ribbed gins later supplied. The defect was one in performance or in the capacity of the gins. The contract warranted each of the gins ''to perform what is claimed for it in printed circulars.'' So referred to, the language of the circulars was adopted and became the warranty of capacity. Mechem on Sales, section 1240; 35 Cyc., 385. The performance of the gins under the terms of the contract was to be tested by the claims made for them in the circulars. Although there is some reference to these circulars in the record, there is no proof as to their contents, nothing to show the nature of the warranty, and nothing upon which to base a suit for breach thereof.

We do not think that the defendants can be held for damages for their conduct after receiving notice of the failure of these gins to work. They went to the plantation of the plaintiffs and seemingly used their best efforts to adjust the gins. While they worked on them for some two months, so far as the record discloses, they did this with the consent of the plaintiffs. In other words, it does not appear that plaintiffs at any time during these two months made a peremptory demand upon defendants to install new gins or return the

purchase money. Defendants were bound to do one of these two things upon ascertaining that the gins sold would not work. After trying to make the gins handle the plaintiffs' cotton, and spending considerable time and money in this effort, defendants finally gave up the undertaking and furnished the plaintiffs with new gins which were satisfactory. Defendants in this way complied with their contract, and are under no further liability to the plaintiffs under the written agreement and the circumstances appearing.

It results that the judgment of the court of civil appeals is reversed, and the judgment of the circuit court of Shelby county is affirmed, and the case dismissed.